UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---------------------------------------x

KRISTIN ORR, an individual,

                Plaintiff,

vs.

MIDLAND CREDIT MANAGEMENT, INC., a
Kansas Corporation; and JOHN AND JANE
DOES NUMBERS 1 THROUGH 10,

                Defendants.

---------------------------------------x

CASE NO.: 8:11-CV-989 (MAD/DRH)

**COMPLAINT FOR VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT AND FAIR CREDIT REPORTING ACT**

**DEMAND FOR JURY TRIAL**

## I. PRELIMINARY STATEMENT

1. Plaintiff, KRISTIN ORR ("Plaintiff" or "ORR"), brings this action for the illegal practices of the Defendant MIDLAND CREDIT MANAGEMENT, INC. ("MIDLAND") who, *inter alia*, used false, deceptive, and misleading practices, and other illegal practices, in connection with its attempts to collect an alleged debt from the Plaintiff.

2. The Plaintiff alleges that MIDLAND's collection practices violate the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* ("FDCPA") and the Fair Credit Reporting Act, 15 U.S.C. §1681, *et seq.* ("FCRA").

3. Such collection practices include, *inter alia*, making false, deceptive, and misleading means to collect a debt from a consumer and by using unfair and unconscionable means to collect a debt.

4. The FDCPA regulates the behavior of collection agencies attempting to collect a debt on behalf of another. The United States Congress has found abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors, and has determined that abusive debt collection practices contribute to a number of personal

bankruptcies, marital instability, loss of jobs, and invasions of individual privacy. Congress enacted the FDCPA to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote uniform State action to protect consumers against debt collection abuses. 15 U.S.C. § 1692(a) - (e).

5. The FDCPA is a strict liability statute, which provides for actual or statutory damages upon the showing of one violation. The Second Circuit has held that whether a debt collector's conduct violates the FDCPA should be judged from the standpoint of the "least sophisticated consumer." *Clomon v. Jackson*, 988 F.2d 1314 (2d Cir. 1993).

6. To prohibit deceptive practices, the FDCPA, at 15 U.S.C. § 1692e, outlaws the use of false, deceptive, and misleading representation or means in connection with the collection of any debt and names a non-exhaustive list of certain *per se* violations of false and deceptive collection conduct. 15 U.S.C. § 1692e(1)-(16). Among the *per se* violations prohibited by that section is: the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer, 15 U.S.C. § 1692e(10).

7. The FCRA was enacted to require the consumer reporting agencies to adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information. 15 U.S.C. § 1681(b).

8. Under the FCRA, wherever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum accuracy of the information concerning the individual about whom the report relates. 15 U.S.C. 1681e(b).

9. Under the FCRA, 15 U.S.C. § 1681b(a), the statute states:

> (a) In general
> Subject to subsection (c) of this section, any consumer reporting agency may furnish a consumer report under the following circumstances and no other:
> (1) In response to the order of a court having jurisdiction to issue such an order, or a subpoena issued in connection with proceedings before a Federal grand jury.
> (2) In accordance with the written instructions of the consumer to whom it relates.
> (3) To a person which it has reason to believe—
> (A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer; or
> (B) intends to use the information for employment purposes; or
> (C) intends to use the information in connection with the underwriting of insurance involving the consumer; or
> (D) intends to use the information in connection with a determination of the consumer's eligibility for a license or other benefit granted by a governmental instrumentality required by law to consider an applicant's financial responsibility or status; or
> (E) intends to use the information, as a potential investor or servicer, or current insurer, in connection with a valuation of, or an assessment of the credit or prepayment risks associated with, an existing credit obligation; or
> (F) otherwise has a legitimate business need for the information—
> (i) in connection with a business transaction that is initiated by the consumer; or
> (ii) to review an account to determine whether the consumer continues to meet the terms of the account.

10. Under the FCRA, 15 U.S.C. § 1681b(c)(1)(a), the statute states:

> A consumer reporting agency may furnish a consumer report relating to any consumer pursuant to subparagraph (A) or (C) of subsection (a)(3) of this section in connection with any credit or insurance transaction that is not initiated by the consumer only if— **(A)** the consumer authorizes the agency to provide such report to such person.

11. Under the FCRA, 15 U.S.C. § 1681b(f), the statute states:

> A person shall not use or obtain a consumer report for any purpose unless— (1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and (2) the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification.

12. Under the FCRA, any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; such amount of punitive damages as the court may allow; and the costs of the action together with reasonable attorney's fees.  15 U.S.C. § 1681n.

13. Under the FCRA, any person who is negligent in failing to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure, the costs of the action together with reasonable attorney's fees.  15 U.S.C. § 1681o.

14. As set forth herein, Plaintiff seeks statutory damages, actual damages, punitive damages, attorney fees, costs, and all other relief, equitable or legal in nature, as deemed appropriate by this Court, pursuant to the FDCPA and FCRA and all other common law or statutory regimes.

## II.  PARTIES

15. Plaintiff is a natural person.

16. At all times relevant to this lawsuit, Plaintiff was a citizen of, and resided in, the Town of Schuyler Falls, Clinton County, New York.

17. At all times relevant to this lawsuit, MIDLAND is a corporation existing pursuant to the laws of the State of Kansas.

18. On information and belief, MIDLAND maintains its principal business address at 8875 Aero Drive, City of San Diego, San Diego County, California.

19. Defendants, JOHN AND JANE DOES NUMBERS 1 THROUGH 10, are sued under fictitious names as their true names and capacities are yet unknown to Plaintiff. Plaintiff will amend this complaint by inserting the true names and capacities of these DOE defendants once they are ascertained.

20. The Plaintiff is informed and believes, and on that basis alleges, that Defendants, JOHN AND JANE DOES NUMBERS 1 THROUGH 10, are natural persons and/or business entities all of whom reside or are located within the United States who personally created, instituted and, with knowledge that such practices were contrary to law, acted consistent with and oversaw policies and procedures used by the employees of MIDLAND that are the subject of this Complaint. Those Defendants personally control the illegal acts, policies, and practices utilized by MIDLAND and, therefore, are personally liable for all of the wrongdoing alleged in this Complaint.

### III.  JURISDICTION & VENUE

21. Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d), 15 U.S.C. § 1681, and 28 U.S.C. § 1331.

22. Declaratory relief is available pursuant to under 28 U.S.C. §§ 2201, 2202.

23. Venue is appropriate in this federal district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred within this federal judicial district, and because MIDLAND is subject to personal jurisdiction in the State of New York at the time this action is commenced.

## IV.  FACTS CONCERNING PLAINTIFF

24. Sometime prior to 2009, Plaintiff allegedly incurred two financial obligations that arose out of transactions in which the money, property, insurance, or services which are the subject of the transaction are for personal, family, and household purposes. On information and belief, one of these financial obligations was for an unsecured credit account. The second financial obligation was for an unsecured credit account with Fingerhut Credit Advantage ("Fingerhut"). For ease of reference, these two financial obligations are referred to hereafter as the "Orr Obligation."

25. MIDLAND contends that the Orr Obligation is in default.

26. The Orr Obligation is a "debt" as defined by 15 U.S.C. §1692a(5).

27. Plaintiff is, at all times relevant to this lawsuit, a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

28. Plaintiff is, at all times relevant to this lawsuit, a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

29. MIDLAND is a leading purchaser and collector of non-performing consumer debts, which are in default at the time the debts are acquired.

30. Plaintiff is informed and believes, and on that basis alleges, that sometime prior to 2009, the creditor of the Orr Obligation either directly or through intermediate transactions assigned, placed, transferred, or sold the debt to MIDLAND for collection.

31. MIDLAND collects, and attempts to collect, debts incurred, or alleged to have been incurred, for personal, family, or household purposes on behalf of creditors using the U.S. Mail, telephone, and Internet.

32. MIDLAND is, at all times relevant to this complaint, a "debt collector" as defined by 15 U.S.C. § 1692a(6).

33. MIDLAND is, at all times relevant to this complaint, a "person" as defined by 15 U.S.C. § 1681a(b).

34. In 2009 Plaintiff decided to file for Chapter 7 bankruptcy.

35. On May 21, 2009, Plaintiff filed a petition for Chapter 7 bankruptcy relief in the United States Bankruptcy Court for the Northern District of New York, which was captioned with Case Number 09-11826-1-rel.

36. On Schedule F of Plaintiff's Chapter 7 bankruptcy petition, she listed Fingerhut and MIDLAND as Creditors who held Unsecured Non-Priority Claims with respect to the Orr Obligation. Furthermore, Plaintiff's Chapter 7 bankruptcy petition also expressly listed MIDLAND a second time as a Creditor Holding Unsecured Nonpriority Claims for the second Orr Obligation.

37. On May 23, 2009, a Notice of Meeting of Creditors was sent by the Bankruptcy Court to *all* creditors listed in Plaintiff's bankruptcy petition – including, specifically MIDLAND and Fingerhut. A court employee, Joseph Speetjens, signed the certificate of service for the Notice under the penalty of perjury. The Notice of Meeting of Creditors that was sent by the Bankruptcy Court to MIDLAND was not returned as undeliverable.

38. The Notice of Meeting of Creditors that was sent by the Bankruptcy Court to MIDLAND was not returned as undeliverable.

39. The Notice of Meeting of Creditors that was sent by the Bankruptcy Court to Fingerhut was not returned as undeliverable.

40. On September 28, 2009, the U.S. Bankruptcy Court granted Plaintiff's Chapter 7 bankruptcy petition and accordingly entered an Order discharging all of her debts including the Orr Obligation, which was owned and being collected by MIDLAND.

41. On September 30, 2009, the Court sent a copy of its discharge order to all of Plaintiff's creditors including MIDLAND and was not returned as undeliverable.

42. On September 30, 2009, the Court sent a copy of its discharge order to all of Plaintiff's creditors including Fingerhut and was not returned as undeliverable.

43. On or about January 15, 2010, Plaintiff discovered that MIDLAND had performed a "hard" credit inquiry on her credit report in November 2009, which was subsequent to the discharge of her bankruptcy. At that time, a credit inquiry of Plaintiff's credit report explicitly revealed that the Orr Obligation had been already discharged in bankruptcy.

44. Notwithstanding the foregoing, MIDLAND has knowingly continued its efforts to collect the Orr Obligation from Plaintiff, which was discharged in bankruptcy.

45. In furtherance of its continued efforts to collect the Orr Obligation, during the past year MIDLAND communicated with both Plaintiff and a third party, Dorthea Burdick (Plaintiff's mother), via telephone to request payment of the discharged debt.

46. With respect to Ms. Burdick, MIDLAND employees called her twice during the past year despite the fact that Ms. Burdick informed MIDLAND on the first call that Plaintiff did not live there and further requested that MIDLAND cease making any further calls to her telephone number.

47. MIDLAND's above-referenced telephone calls to Ms. Burdick occurred within approximately seven days of one another and during each call MIDLAND's debt collector employees continued to demand that Ms. Burdick put Plaintiff on the telephone despite being

told by Ms. Burdick that Plaintiff did not live there and after requesting that MIDLAND cease making any further calls to her telephone number

48. At no time did MIDLAND ever ask Ms. Burdick to confirm, correct, or supply location information concerning Plaintiff.

49. At all times relevant to this action, MIDLAND had Plaintiff's location information in its files.

50. At no time did Plaintiff give her express consent for MIDLAND to communicate with any third parties concerning the alleged Orr Obligation.

51. Plaintiff subsequently called MIDLAND and informed its debt collection employees that the alleged Orr Obligation, which MIDLAND seeks to collect from her, had been discharged in bankruptcy and asked that MIDLAND cease any further attempts to collect the debt.

52. Notwithstanding the above, MIDLAND continued its efforts to collect the discharged Orr Obligation from Plaintiff.

53. On March 10, 2011 a MIDLAND debt collector employee, who identified himself as "Sam, an account manager with MCM," placed a telephone call to Plaintiff. ("3/10/11 Conversation").

54. The 3/10/11 Conversation last approximately 18 minutes.

55. At the outset of the 3/10/11 Conversation, Sam advised Plaintiff that he was attempting to collect on an "old Fingerhut account that MIDLAND had purchase in 2005."

56. During the 3/10/11 Conversation, Plaintiff repeatedly informed Sam that she had filed for Chapter 7 bankruptcy in 2009, that the bankruptcy court granted her Chapter 7 bankruptcy petition, and that the alleged Orr Obligation had been discharged by the Bankruptcy

Court. Undeterred, Sam adamantly informed Plaintiff that her bankruptcy discharge had no effect on the validity of the Orr Obligation he was attempting to collect or Plaintiff's continuing responsibility to pay it; he further stated that MIDLAND would not stop its attempts to collect the Orr Obligation unless Plaintiff hired an attorney and provided that information to MIDLAND.

57. At no time did Plaintiff ever grant MIDLAND written permission to contact anyone or any credit reporting agency or to make inquiries into her credit report.

58. At all times relevant to this action, MIDLAND was aware of the discharged status of the Orr Obligation and, notwithstanding this knowledge, performed inquiries on Plaintiff's credit report without any permissible purpose for doing so.

59. Plaintiff's creditworthiness has been compromised by the acts and omissions of MIDLAND's impermissible inquiries to her credit including, but not limited to a decrease in her credit score which in turn caused her not to qualify for a lower interest rate on her home mortgage and other credit accounts.

60. MIDLAND and its employees knew it did not have a permissible purpose to pull Plaintiff's credit reports in violation of 15 U.S.C. § 1681b.

61. The acts and omissions of MIDLAND and its employees were willful, malicious, intentional and knowing, and in gross disregard for Plaintiff's rights and well-being.

62. As a result of MIDLAND's foregoing wrongful conduct, Plaintiff has suffered emotional damages including, but not limited to, humiliation, upset, anger, sleeplessness, anxiety, and mental anguish

### V.  FIRST CAUSE OF ACTION
### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
### (AGAINST ALL DEFENDANTS)

63. Plaintiff realleges and incorporates by reference the allegations in the preceding paragraphs of this Complaint.

64. Defendant violated the FDCPA. Defendant's FDCPA violations include, but are not limited to, the following:

    (a) Communicating with any person other than the consumer for the purpose of acquiring location information in a manner that violates 15 U.S.C. § 1692b(1);

    (b) Communicating with any person other than the consumer for the purpose of acquiring location information in a manner that violates 15 U.S.C. § 1692b(2);

    (c) Communicating with any person other than the consumer for the purpose of acquiring location information in a manner that violates 15 U.S.C. § 1692b(3);

    (d) Communicating with Plaintiff's mother -- a third party -- in connection with MIDLAND's attempts to collect a debt from Plaintiff, without Plaintiff's express permission, and without having a permissible purpose, which constitutes a violation of 15 U.S.C. § 1692c(b);

    (e) Engaging in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt in violation of 15 U.S.C. § 1692d;

    (f) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number in violation of 15 U.S.C. § 1692d(5);

    (g) Using false, deceptive, or misleading representation and/or means in connection with the collection of a debt in violation of 15 U.S.C. § 1692e;

(h) Making false, deceptive, and misleading representations concerning the character, amount, and legal status of a debt in violation of 15 U.S.C. §1692e(2)(A);

(i) Attempting to collect a debt when MIDLAND is legally prohibited from doing so in violation of 15 U.S.C. §1692e(5);

(j) Threatening to take action that cannot legally be taken and/or that is not intended to be taken in violation of 15 U.S.C. §1692e(5);

(k) Communicating with Plaintiff and third parties in connection with an attempt to collect the Orr Obligation, wherein Defendants knew or had reason to know that the debt has been discharged in bankruptcy and could no longer be collected, which conduct constitutes a violation of 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(5), and 1692e(10);

(l) Using an unfair or unconscionable means to collect or attempt to collect any debt in violation of 1692f;

(m) Attempting to collect the Orr Obligation (including any interest, fee, charge, or expense incidental to the principal obligation) when such amount is expressly not permitted by law in violation of 1692f(1);

### VI.  SECOND CAUSE OF ACTION
### VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### NEGLIGENT NONCOMPLIANCE
### (AGAINST ALL DEFENDANTS)

65. Plaintiff realleges and incorporates by reference the allegations in the preceding paragraphs of this Complaint.

66. MIDLAND negligently violated the provisions of the FCRA by willfully and/or negligently failing to comport with the above mention sections of FCRA, 15 U.S.C. § 1681b and having credit inquiries placed on her credit reports without Plaintiff's authorization and without

any permissible purpose.

67. The presence of the credit pulls on Plaintiff's credit report without authorization adversely effects Plaintiff's good name and credit-worthiness and is in violation of § 15 U.S. C. 1681b.

68. MIDLAND's violation of 15 U.S.C. § 1681b leaves it subject to civil remedies to Plaintiff under 15 U.S.C. § 1681n.

69. MIDLAND's violation of 15 U.S.C. § 1681b leaves it subject to civil remedies to Plaintiff under 15 U.S.C. § 1681o, statutory and actual damages and attorney fees and costs.

### VII.  THIRD CAUSE OF ACTION
### VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### WILLFUL NONCOMPLIANCE
### (AGAINST ALL DEFENDANTS)

70. Plaintiff realleges and incorporates by reference the allegations in the preceding paragraphs of this Complaint.

71. MIDLAND willfully violated the provisions of the FCRA by willfully and/or negligently failing to comport with FCRA, 15 U.S.C. §§ 1681b and 1681n in having credit inquiries placed on Plaintiff's credit reports without Plaintiff's authorization or having any permissible purpose.

72. Plaintiff suffered damages as a result of MIDLAND's violations of the FCRA.

73. MIDLAND's violation of 15 U.S.C. § 1681b leaves it subject to civil remedies to Plaintiff under 15 U.S.C. § 1681n.

74. Plaintiff is entitled to recover actual, statutory, and punitive damages as a result of MIDLAND's violation of the FCRA.

## VIII.  PRAYER FOR RELIEF

75.  WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor as follows:

**A.  With Respect to Plaintiff's FIRST CAUSE OF ACTION:**

(i)  An award of actual damages for Plaintiff, in an amount to be determined at trial, pursuant to 15 U.S.C. § 1692k(a)(1);

(ii)  An award of the maximum statutory damages for the Plaintiff pursuant to 15 U.S.C. § 1692k(a)(2)(A)

(iii)  Attorney's fees, litigation expenses, and costs pursuant to 15 U.S.C. § 1692k(a)(3); and

(iv)  For such other and further relief as may be just and proper.

**B.  With Respect to Plaintiff's SECOND CAUSE OF ACTION:**

(i)  An award of actual damages for Plaintiff, in an amount to be determined at trial, pursuant to 15 U.S.C. § 1681o(a)(1);

(ii)  An award of the maximum statutory damages for the Plaintiff pursuant to 15 U.S.C. § 1681o(a)(2);

(iii)  Attorney's fees, litigation expenses, and costs pursuant to 15 U.S.C. § 1681o(b); and

(iv)  For such other and further relief as may be just and proper.

**C.  With Respect to Plaintiff's THIRD CAUSE OF ACTION:**

(i)  An award of actual damages for Plaintiff, in an amount to be determined at trial, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

(ii)  An award of actual damages for Plaintiff, in an amount to be determined at trial,

        pursuant to 15 U.S.C. § 1681n(a)(1)(B);

(iii)    An award of punitive damages for Plaintiff, in an amount to be determined at trial, pursuant to 15 U.S.C. § 1681n(a)(2);

(iv)    Attorney's fees, litigation expenses, and costs pursuant to 15 U.S.C. § 1681n(a)(3); and

(v)    For such other and further relief as may be just and proper.

## IX. JURY DEMAND

Plaintiff hereby demands that this case be tried before a Jury.

DATED:    Fresh Meadows, New York
                August 19, 2011

                        *s/ William F. Horn*
                        William F. Horn, Esq. (WH-1070)
                        LAW OFFICE OF WILLIAM F. HORN
                        188-01B 71st Crescent
                        Fresh Meadows, NY 11365
                        Telephone: (718) 785-0543
                        Facsimile: (866) 596-9003
                        E-Mail: bill@wfhlegal.com

                        *Attorney for Plaintiff, Kristin Orr*